**<u>EVIDENTIARY SUBMISSION IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT SUBMITTED
ON BEHALF OF JACKIE GRAHAM AND JULIE
MAGEE IN THEIR INDIVIDUAL CAPACITIES</u>**

# EXHIBIT
# 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES KYLE TINDOL, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:13-cv-00092-WKW |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| REVENUE, ALABAMA PERSONNEL | ) | |
| DEPARTMENT, JACKIE GRAHAM, in | ) | |
| her individual and official capacities, | ) | |
| JULIE MAGEE, in her individual and | ) | |
| official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF JACKIE GRAHAM

Before me, the undersigned Notary Public for said County and said State personally appeared Jackie Graham, who after being duly sworn testified as follows:

1.      My name is Jackie Graham.  I understand and acknowledge that I am making the statements in this affidavit under oath.  I am over 19 years of age.  I am fully competent to make this affidavit, and I give this testimony of my own free will.  To my knowledge, all of the facts stated in this affidavit are true and correct.

2.      The statements contained in this affidavit are based upon my personal knowledge, my knowledge of the operations of the Alabama State Personnel Department ("SPD") and its official business records.

3.      In 1939, the citizens of the State of Alabama passed a constitutional amendment authorizing a State Merit System.  Alabama Code §§ 36-26-1 *et seq*. sets forth the provisions governing this system which is designed to ensure all citizens of demonstrated capacity, ability,

and training an equal opportunity to compete for service with the State of Alabama. The Merit System Law created SPD, a State Director of Personnel, and a State Personnel Board ("SPB"). SPD is statutorily-created subdivision of the State of Alabama.

4.      I am the Director of SPD, and I serve as the executive head of department for SPD. As Director of SPD, I direct and supervise all its administrative and technical activities. I also appoint all SPD employees (excluding my own position). I served as Deputy Director of SPD from July 1, 1998 to my appointment as State Personnel Director on December 1, 2005. I am familiar with the history and workings of the merit system and its classifications.

5.      Each employee hired in the classified service or promoted into a new position within the classified service must serve a probationary or "working test" period prior to obtaining permanent or "merit system" status. During this probationary period, an employee can be separated for any reason, or no reason at all, as long as it is not for a discriminatory reason. In order to obtain permanent or "merit system" status, the employee must successfully complete the probationary period or working test.

6.      An employee in the "classified service" of the Merit System obtains a property interest in his job, but only after he attains permanent or "merit system" status in a particular job classification after successfully completing a probationary period.

7.      Every position that is in the classified service of the merit system has a job classification title and each job classification is assigned to a salary pay grade. Within this pay grade are "steps" representing approximately two and one half percent increase per step. Employees normally progress through the salary pay grade based on performance scores until the top step is reached or the employee is promoted to a higher pay grade.

8.      Merit System employees who receive "Exceeds Standard" or "Consistently Exceeds Standards" ratings on performance appraisals may receive merit raises of two steps each year.    Merit System employees who receive "Meets Standards" ratings on performance appraisals may receive merit raises of one step each year.  From time to time, merit raises are not available ("frozen") due to a lack of funding. Merit raises were frozen from January 1, 2008 until December 31, 2013.

9.      The Alabama Administrative Code includes rules applicable to all positions in the classified service.

10.     SPD manages the recruitment and testing process for all merit system jobs with boards, agencies, and departments of the State of Alabama.

11.     To be considered for employment or promotion to any of these merit system jobs, a candidate must first submit an application for examination with SPD.

12.     If the candidate meets minimum qualifications for the job classification, SPD administers an examination or scores the experience and education information on the application and places the candidate on a register.

13.     Thus, a register is a list of all minimally qualified applicants for a particular job classification.

14.     Promotional registers are those registers which are restricted to current Merit System employees of the State of Alabama who hold particular positions.

15.     Open/Competitive registers are those which are not restricted in this fashion and which are open to applicants who are not currently employees of the State of Alabama as well as current employees.

16.     SPD ranks applicants on a register in one of two ways. In the first type of rankings, candidates are listed in order of their scores from highest to lowest. The other ranking mechanism is called "banding" which uses a statistical formula to evaluate people into bands in which the candidates have statistically insignificant differences in their scores.

17.     SPD maintains registers for job classifications which are unique to individual agencies and others which are for positions which exist throughout State government.

18.     When a State agency, board, or department needs to fill a vacant position, it requests that SPD provide a list of eligible candidates. This list is called a "Certification of Eligibles." The Certification of Eligibles is made up of the top ten names on the register, plus any ties. Applicants with the same score are all included. Consequently, a Certification of Eligibles may include far more than ten names.

19.     If the position is tied to a particular geographic location or county, restrictions on availability the candidate expressed on the application for examination will prevent a candidate who ranks in the top ten names on the register from appearing on a Certification of Eligibles if the position is located in a county outside of those the candidate listed on the application for examination.

20.     In July of 2012, SPD received a Request for Certification of Candidates from the Alabama Department of Revenue. This request sought a Certification of Eligibles from an Open/Competitive register for the Programmer Analyst, Associate Position in the Quality Management Option. A copy of this Request for Certification of Candidates is attached as Exhibit A.

21.     On July 31, 2012, SPD issued a Certification of Eligibles for the Programmer Analyst, Associate Position in the Quality Management Option in response to the Alabama

Department of Revenue's request. This Certification of Eligibles was the list of candidates on a continuous Open/Competitive Register for the Programmer Analyst, Associate Position in the Quality Management Option. This was a banded register.

22.     In August of 2012, SPD received the Certification of Eligibles back from the Alabama Department of Revenue. The notations on the Certification of Eligibles indicated that the appointing authority appointed Gary W. Lewis and Jolynn M. Sanford for Programmer Analyst, Associate positions. This is indicated by the appearance of the letter "A" next to Lewis and Sanford on the Certification of Eligibles along with a new position number, the effective date, and the pay for the new position. The notations also indicated that the other candidates on the Certification of Eligibles had been considered as part of the selection process. This is indicated by the appearance of the letter "C" next to the other names on the Certification of Eligibles. A copy of the returned Certification of Eligibles is attached as Exhibit B.

23.     In April of 2013, SPD received a Request for Certification of Candidates from the Alabama Department of Revenue. This request sought a Certification of Eligibles from an Open/Competitive register for the Programmer Analyst, Associate Position in the General Option. SPD provided the requested Certification of Eligibles to Alabama Department of Revenue. When the Alabama Department of Revenue returned it to SPD, the notations on the Certification of Eligibles indicated that the appointing authority had appointed Velita Parker and Tobytha Powell. A copy of the returned Certification of Eligibles is attached as Exhibit C.

24.     In May of 2013, SPD received a Request for Certification of Candidates from the Alabama Department of Revenue. This request sought a Certification of Eligibles from an Open/Competitive register for the Programmer Analyst, Associate Position in the General Option. SPD provided the requested Certification of Eligibles to Alabama Department of

Revenue. When the Alabama Department of Revenue returned it to SPD, the notations on it indicated that the appointing authority had appointed Kashay Stanford. A copy of the returned Certification of Eligibles is attached as Exhibit D.

25.     In February of 2014, SPD received a Request for Certification of Candidates from the Alabama Department of Revenue. This request sought a Certification of Eligibles from an Open/Competitive register for the Programmer Analyst, Associate Position in the General Option. SPD provided the requested Certification of Eligibles to Alabama Department of Revenue. When the Alabama Department of Revenue returned it to SPD, the notations on it indicated that the appointing authority had appointed Kyle Tindol, David Watts, and Elias Jacobson. A copy of the returned Certification of Eligibles is attached as Exhibit E.

26.     Chapter 670-X-9-.04(1) of the Alabama Administrative Code sets forth rules which are only applicable to vacancies filled using a Promotional register. The rules in this provision are not applicable to vacancies filled using an Open/Competitive register.

27.     Neither SPD nor SPB develops or promulgates employee handbooks or personnel manuals for other state agencies. SPB does exercise some rule-making authority regarding specific personnel policies which are applicable to all classified employees.  For example, such rules exist regarding sick leave, annual leave, holidays, work hours, performance evaluations, and workplace conduct. The existence of these rules does not prohibit or prevent state agencies or departments from promulgating additional rules or policies relating to employment. Indeed, while the SPB has promulgated general work rules for the conduct of classified employees, those work rules explicitly acknowledge that the existence of additional rules that the appointing authorities may promulgate as guidance for their employees. State agencies, boards, and departments typically maintain in-house personnel or human resource staff. The various state

entities subject to SPB rules are entitled to create their own employee guidelines, handbooks and other policies of that sort as long as they do not run afoul of State or federal law, or SPB rules. Various state agencies have policies prohibiting nepotism. Policies prohibiting nepotism do not themselves violate any State or federal law, or any SPB rule.

28.     According to records SPD maintains in the normal course of business, James Kyle Tindol, III ("Kyle Tindol") is an employee of the Alabama Department of Revenue. He is not now and has never been an employee of the SPD.

29.     I have never entered into any written contract with Kyle Tindol, much less one to employ him in any capacity for any purpose. In the normal course of business, SPD maintains the official personnel file for employees of state government, including Kyle Tindol. I have reviewed the official personnel file for Kyle Tindol that SPD maintains. It does not contain a contract between Kyle Tindol and the Alabama Department of Revenue, or any other entity, regarding an employment relationship between Kyle Tindol and the State of Alabama or any of its agencies, departments, boards, or other subdivisions or entities of the State of Alabama.

30.     SPB rules envision that decisions with regard to hiring, firing, and promoting personnel are made within the discretion of the appointing authority for the particular agency or department. I do not make or approve any decisions regarding promotions at state agencies or departments other than SPD or involve myself in the decision-making process in those regards. I did not take any action willfully, maliciously, fraudulently or in bad faith with regard to Kyle Tindol's employment with the Alabama Department of Revenue or his misguided attempt to bring an appeal after the Alabama Department of Revenue decided against promoting him in 2012.

31.     I did not discriminate against Kyle Tindol because of his race, sex, national origin, age, handicap, religion, or political opinions, or affiliations. I did not discriminate against Kyle Tindol on any basis made illegal by any federal statute.

32.     I have not received any information which indicates that Julie Magee discriminated against Kyle Tindol because of his race, sex, national origin, age, handicap, religion, or political opinions or affiliations. I have not received any information which indicates that Julie Magee discriminated against Kyle Tindol on any basis made illegal by any federal statute.

33.     Kyle Tindol has never made the type of complaint which fell within the scope of the hearing rights available under Alabama law or SPB's rules.

34.     Alabama Code §§ 36-26-27(a) & (b) set forth one basis for hearings before the SPB or the SPD Director in certain limited circumstances. Specifically, a classified employee who has been dismissed from State service can appeal the action and the SPB may provide a public hearing. Ala. Code § 36-26-27(a). Additionally, citizens and taxpayers may file charges seeking the removal or discipline of persons in the classified service and are granted a hearing on such charges. Ala. Code § 36-26-27(b). Neither of these statutory provisions include any appeals, hearing or grievance process for promotional decisions.

35.     SPB rules provide an appeals process applicable to certain complaints arising out of employment actions other than dismissal, but that process is limited to complaints for actions that arose from certain enumerated improperly discriminatory motives. Specifically, an applicant or employee may appeal to the SPB and receive a hearing if the applicant or employee has reason to believe that he has been discriminated against because of: (1) religious opinions or affiliations; (2) political opinions or affiliations; (3) race; (4) sex; (5) national origin; (6) age; or

(7) handicap. *See* Alabama Administrative Code Chapter 670-X-4-.03. Attached to this affidavit as Exhibit F is a copy of the specific provision addressing Appeal Rights. The appeals hearing process is available only for the limited bases set forth by or in the SPB rules. It is not a broad, general purpose grievance procedure. It is a limited procedure for complaints of the specific types of discrimination and certain types of personnel actions set forth in Alabama Administrative Code Chapter 670-X-4-.01. These SPB rules do not provide hearings for employees who complain about not receiving promotions unless the employee complains of the types of discrimination described in this paragraph.

36.     SPB adopted Alabama Administrative Code Chapter 670-X-4.-01 through 670-x-4.-03 as a response to a lawsuit filed many years ago addressing race discrimination across state employment.    SPB intended these rules to provide a procedure to address complaints of discrimination in violation of federal law. During the time that I have served as Director of SPD and as Deputy Director of SPD, SPB has reaffirmed this narrow interpretation of the scope of SPB Rule 670-x-4.-03 numerous times. Additionally, I am personally aware of at least one case in which an employee attempted to bring a grievance using Rule 670-x-4.-03 to challenge her non-selection for promotion because of what she claimed was nepotism. In that case, the SPB adopted the recommendation of an Administrative Law Judge who opined that the employee could not bring her grievance pursuant to SPB Rule 670-x-4.-03 because nepotism is not a "non-merit factor" for purposes of that rule. In addition, I am aware of other situations where SPB has limited to its interpretation of "non-merit factor" under these rules to factors which federal law recognized as improper bases for discrimination. SPB has limited resources and its jurisdiction was never intended to create a forum for the micro-management of all personnel decisions within every state agency.

37.     Neither Kyle Tindol, nor anyone acting on his behalf ever provided me with information which indicated that he had reason to believe that he had been discriminated against because of religious or political opinions or affiliations or race, sex, national origin, age, or handicap with respect to any personnel action. Neither Kyle Tindol, nor anyone acting on his behalf ever provided me with information which indicated that he had reason to believe that he had been discriminated against in violation of any federal anti-discrimination law. Consequently, his complaints about his treatment at the Alabama Department of Revenue fell outside of the limited scope of the jurisdiction the SPB has for appeals classified employees may bring.

38.     SPB, through Administrative Law Judge Randy Sallé, responded to Kyle Tindol's request through his then counsel for appellate review of the Alabama Department of Revenue's failure to promote him by explaining that his request was outside the SPB's appellate jurisdiction. A copy of this response is attached as Exhibit G to this affidavit.

39.     I deny that I have violated Kyle Tindol's rights under the Fourteenth Amendment to the United States Constitution to procedural due process or equal protection.

FURTHER THE AFFIANT SAYETH NOT.


Jackie Graham
State Personnel Department

10

STATE OF ALABAMA )
COUNTY OF MONTGOMERY )

I, the undersigned, a Notary Public in and for said County and State, hereby certify that JACKIE GRAHAM, whose name is signed to the foregoing document and who is known to me, comes before me on this day and, being informed of the contents of this document, she executed it on this date.

Under my hand and seal this ___18th___ day of July, 2014.

Lynn M Donahey
NOTARY PUBLIC
My Commission Expires: ___12/1/15___

## **Affidavit of Linda Ellis**

# **Exhibit**

# **A**

## REVENUE DEPARTMENT INTEROFFICE MEMORANDUM

June 24, 2011

TO:        All ADOR Employees

FROM:      Julie P. Magee
           Commissioner of Revenue

SUBJECT:   Nepotism Policy

Effective July 1, 2011, the Alabama Department of Revenue hereby issues a policy on nepotism. All qualified applicants are welcome to apply for positions in this agency and all employees are eligible for upward mobility. However, when there are close family and/or other ties to individuals within the agency, the department wishes to provide equity and neutrality and address forthright any appearance of any partiality or favoritism by identifying these individuals. Thus, the attached policy details the circumstances by which anyone who shares a relationship with any other individual in the Revenue Department can be a member of the team.

Supervisors/managers, it is your responsibility to discuss this policy with your employees and ensure that each employee completes the attached Form HR-7 and return it to the Human Resources Division no later than July 15, 2011. It is a requirement that all individuals disclose their relationship with any other employee. It is also a requirement for every employee to complete the Form HR-7 and affix their signature on the bottom of the form.

Thank you in advance for your support and cooperation in this matter.

Attachment

JK Tindol Production 007

1

## REVENUE DEPARTMENT NEPOTISM POLICY

### Need, Purpose and Scope

The purpose of this policy is to provide guidance that will govern the employment of all relatives and/or households members (defined below) that are employed by the Alabama Department of Revenue. The motivation for this policy is to provide fairness and impartiality in all employment, promotion and supervisory activities. This policy is issued not only to provide equity and neutrality, but also to address any appearance of any partiality or favoritism.

A modern nepotism policy will bring many benefits to the Department. These benefits include the alleviation of actions based upon family loyalty, the appearance of preferentialism, and the circumvention of supervisory chain of command.

### Definitions

Chain of Command: A system whereby authority passes down from the top through a series of supervisory positions in which each is accountable to the one directly superior.

Household: Refers to all individuals who live in the same dwelling.

Relative: Defined to include an employee's spouse, domestic partner, parents, children (including step and foster children), siblings, first cousins, nieces, nephews, grandparents, grandchildren, in-laws, and any person with whom the employee has a relationship that is substantially equivalent to any of the above.

Supervise: To have the direction and oversight of the performance of others, including the audit and evaluation of an employee's work product and/or performance.

Division: As defined by the Revenue Department's organizational chart- Currently the Commissioner's Office, Legal, Media Affairs, Administrative Law, Investigations, Human Resources, Equal Employment Opportunity Office, Internal Audit/Security, Financial Operations, Information Technology, Processing, Taxpayer Advocacy, Sales, Use and Business Tax, Property Tax, Motor Vehicle, Collection Services, District Offices, Taxpayer Policy Administration, and Individual and Corporate Income Tax.

### Policy

While the Alabama Department of Revenue has no prohibition against hiring qualified relatives of employees, the employment of relatives in the same division of an organization can cause serious conflicts and problems with favoritism, conflicts of interest, and employee morale. In these circumstances, all parties, including supervisors, leave themselves open to claims of inequitable consideration in decisions concerning work assignments, transfer opportunities, performance evaluations, promotions, demotions, disciplinary actions, and discharge. In addition to claims of partiality in treatment at work, personal conflicts from outside the work environment can be carried into day-to-day working relationships, potentially causing a hostile work environment.

JK Tindol Production 008

The Alabama Department of Revenue desires to avoid the potential and/or appearance of favoritism that may result from employment relationships with relatives and to minimize the potential for disruption or limitations in the workplace that may result from employment relationship with relatives. Therefore, it is the policy of the Alabama Department of Revenue that applicants will not be hired, nor will employees be promoted or transferred into the same division where a relative is already employed. In addition, applicants will not be hired, nor will employees be transferred into a position under which the applicant or employee would be supervised by a relative. When relatives are Revenue Department employees and work in the same chain of command, one of the members must seek a position transfer out of the same reporting chain of command.

No employee shall participate in the hiring or the reassignment of a relative (including serving on interview panels or other applicant evaluation boards while the relative is being considered). When a relative of a Revenue Department employee is a candidate for a Revenue Department position, the candidate shall be judged in the same manner as other applicants, based on his/her individual merit and qualifications, without influence from employees who are already employed. Any interference or influence exerted by a Revenue Division employee regarding employment, compensation, or working conditions of his or her relative could disqualify the candidate from employment and could be considered a violation of this policy. No employee may hear or investigate a grievance or an appeal from a relative. These restrictions also apply to individuals who are not legally related to but who reside with another employee in the same household.

Existing relationships as of July 1, 2011, the date of the issuance of this policy, will be grandfathered for current work assignments and promotions that do not result in one relative supervising the other. However, the new policy will still be enforced regarding relatives not participating in the hiring, evaluation, reassignment, promotion, supervision, or discipline of a relative or member of household. A promotion or transfer of an employee that would cause a violation of this nepotism policy will not be made. Should a conflict arise out of a relationship, one of the employees may be transferred to another open position consistent with the employee's skills at the earliest practicable time. Alternately, the Revenue Department may change supervisory authority or provide alternate assignments that remove the potential for a conflict of interest.

#### Major Suppliers or Vendors

The Revenue Department also reserves the right not to employ relatives of high-level employees of its major vendors or suppliers when the Revenue Department determines in its discretion that such a restriction is necessary to avoid the actual or appearance of a conflict of interest or to protect confidential information.

#### Requirement to Disclose

Employees who apply for positions for which a relative is involved in any capacity with the selection process, and employees involved in selecting candidates for a position for which a relative has applied are required to make a complete written disclosure of the relationship immediately upon learning of such involvement. No employee may be involved in selecting a relative for a position.

3

Additionally, employees are required to disclose changes in their personal situations which may be covered under this policy. Employees who marry while employed or become part of the same household are required to disclose the relationship in order to ensure that conflicts of interest are avoided. If in the opinion of the Revenue Department, in its sole discretion, a conflict arises out of a relationship, one of the employees may be transferred to another open position consistent with the employee's skills at the earliest practicable time. Alternately, the Revenue Department may change supervisory authority or provide alternate assignments that remove the potential for a conflict of interest. The Revenue Department reserves the right to terminate the employment of an employee if the Revenue Department concludes that it is necessary under the circumstances to avoid real or perceived conflicts of interest.

Failure to fully disclose the relationship is a violation of this policy and may result in disciplinary action, up to and including dismissal from employment.

#### Employment of Relatives Where No Supervisory Relationship Exists

The Revenue Department reserves the right to refuse to hire, promote, transfer, or otherwise reassign a person to a position, shift, or other condition of employment in the same division, or work area wherein his/her relationship has the potential for creating an adverse impact on the supervision, safety, security, or morale of the workforce, involves a potential conflict of interest, places limitations on the employee's future promotion opportunities within the division, or gives rise to a reasonably foreseeable risk of nepotism in the future. The Division Manager or Division Director will make a written recommendation to the Revenue Commissioner of whether adverse impact has the potential to exist or not and must be able to articulate his/her reasons for the decision. The Revenue Commissioner will make the final determination.

All personnel are expected to comply with any procedures written to support this policy.

#### References

Alabama Ethics Commission, *Handbook for Public Employees*

http://ethics.alabama.gov/news/Ethics_Law_Jan_2010.pdf

Alabama Ethics Commission, *Handbook for Public Officials*

http://ethics.alabama.gov/news/Ethics_Law_Jan_2010.pdf

Code of Alabama, Section 36-25-5 (a) Related to use of your position to obtain personal gain for yourself or family member.

JR Tindol Production 0010

**<u>Affidavit of Linda Ellis</u>**

# Exhibit

# B

## POSITION CLASSIFICATION QUESTIONNAIRE
### STATE OF ALABAMA
Personnel Department

PCQ# _____ 04239719

1. Employee's Name _____ Holley Tindoll

(For Dept Use Only)

2. Classification _____ IT Manager II _____ 5. Division or Bureau _____ INFORMATION TECHNOLOGY

3. Working Title _____ Assistant Director, Information Technology Division _____ 6. Section or Unit

4. Department _____ 019/REVENUE _____ 7. Work Location (County) _____ Montgomery

8. Name and title of immediate supervisor (person who assigns work) _____ Kenneth C. Ball, Director Information Technology Division

9. Position is: Full Time, Permanent

10. SUPERVISION EXERCISED: Only complete this section if this position completes performance appraisals or actually participates in rating other employees. If the position functions as a lead worker and only assigns work, then list that responsibility on item 11B as a duty.

a. Total number of employees that this position supervises: _____ 23

b. Percentage of time spent on supervision and related duties: _____ 20%

c. If this position DIRECTLY supervises 5 or less employees, give names and titles. If this position DIRECTLY supervises more than 5 employees, give the number and official classification of each.

| 01- Programmer | 01- ASA III |
|---|---|
| 03-Programmer Analyst Associate | |
| 12-Programmer Analyst | |
| 05-Programmer Analyst Senior | |
| 01-IT Systems Specialist Senior | |

d. As a supervisor, does this position: (Check the activities performed)

☒ Make daily work assignments?     ☒ Interview and make hiring recommendations?
☒ Approve and Disapprove leave requests?     ☒ Recommend disciplinary actions?
☒ Reassign job duties on permanent basis?     ☒ Prepare and conduct performance appraisal?

11. DESCRIPTION OF DUTIES PERFORMED?

a. In one or two sentences, describe the major purpose of this position.

| This position is the Assistant Director, Information Technology Division of the Revenue Department. This position manages the day-to-day activities of a large technical staff in a complex IT environment and assists the Director in planning, directing, co-ordinating and controlling the various sections to ensure adequate systems delivery and technical support. |
|---|

DIVISION
HUMAN RESOURCES
REVENUE DEPARTMENT

2008 SEP 5 PM 3 20

Defendants 0530

b. Duty Statement: *(Complete Column "C" first )*
- In column A, indicate PERCENTAGE of time spent on each duty (total should not exceed 100%).
- In column B, rate the duties as to their IMPORTANCE. VI-Very Important I-Important SI-Somewhat Important
- In column C, describe in detail each of the position's PERMANENT duties and responsibilities using your OWN words.

| A<br>% | B<br>rating | C<br>Description of Duties |
|---|---|---|
| 20% | VI | Performs management duties such as hiring new employees, evaluating and reviewing work, providing feedback on performance, recommending or approving training, conducting meetings, communicating information to staff and users and ensuring policies and procedures are followed by staff. |
| 40% | VI | Manages and coordinates the activities of the RITS programming support, ARIS programming support and Database Administration sections. |
| 20% | VI | Assists the Director in planning, directing, writing policies, coordinating and controlling the various sections and functions of the division so that a continuity of management and leadership is provided. |
| 10% | I | Researches, identifies, evaluates and recommends new technology and services which would improve the quality of technical support and services provided to the Department. |
| 10% | VI | Develops, reviews, evaluates, and makes recommendations on Request for Proposals, Invitations to Bid, Statements of Work, and contracts pertaining to Information Technology support and services. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

(Attach additional sheets if necessary)

Defendants 0531

12. DECISION MAKING: Give example(s) of the more important decisions made while performing the duties of this position. Then list the possible effect of error(s) on the organization or general public.

| |
|---|
| Decisions about which technolgy and services should be employed to provide efficient and reliable serices could result in the |
| loss of data and/or have an adverse affect on the infrastructure resulting in lost man hours. Errofs in the allociation of technical |
| resources could result in delays implementations and/or increased costs. |
| |
| |

13. FINANCIAL RESPONSIBILITY: If this position has responsibility for controlling and/or authorizing the expenditure of funds, please describe and indicate approximate amount controlled.

| |
|---|
| This position makes recommendations for technology and professional services expenditures, but does not authorize the |
| expenditure of funds. |
| |
| |
| |

14. WORK GUIDELINES: (Only include written guidelines) List the specific laws, regulations, instructions, manuals or procedures that must be followed in performing this job and describe how they are used.

| LIST ITEM | HOW USED |
|---|---|
| State Personnel Manual | Reference manual for personnel issues, policies and procedures. |
| Revenue Employee Handbook | Reference for policies and procedures pertaining to the Revenue Department. |
| Performance Appraisal Manual | Reference manual for performing personnel performance appraisals. |
| | |
| | |
| | |
| | |

15. SUPERVISION RECEIVED:

How is this position's work reviewed? (Check One)
- ☐ Supervisor reviews most or all of work while it is being done.
- ☐ Supervisor spot checks work as it is being done.
- ☐ Supervisor reviews most or all of work after completion.
- ☒ Supervisor spot checks work after completion.
- ☐ Supervisor does not review work.
- ☐ Other. (describe fully)

16. WORK CONTACTS: With whom, outside of co-workers in this unit, must this position regularly come in contact?

| Who Contacted | How (Phone, in person, etc.) | Purpose of Contact | How Often |
|---|---|---|---|
| Revenue Managers | Phone, in person | Analyze requirements, coordinate technical services | As required |
| Section Managers | Phone, in person | Exchange information and resolve issures | Daily |
| Vendors | Phone, in writing, in person | Schedule activities, contract negotiations | As required |
| Other State Agencies | Phone, in writing, in person | Exchange information and resolve issures | As required |
| | | | |

Defendants 0532

17. EQUIPMENT USED: List any equipment used regularly. Give percent of time spent in operation of each. For vehicles and construction and maintenance equipment operated, indicate capacity, e.g., tonnage, yardage.

| Personal Computers | 20% | | % |
|---|---|---|---|
| Printers | 5% | | % |
| Telephone | 5% | | % |
| | % | | % |

a. Does this position require typing?
☒ No
☐ Yes--Give % of time spent in typing _____%

b. Does this position require taking shorthand?
☒ No
☐ Yes--Give % of time spent in shorthand _____%

## ITEMS TO BE COMPLETED BY IMMEDIATE SUPERVISOR AND/OR APPOINTING AUTHORITY

18. Are the statements of the employee accurate and complete? (Indicate inaccuracies and incomplete items)
Yes

19. If duties listed are for reallocation of position, what additional and/or more complex duties have been added to this position to warrant reallocation.
N/A

20. List any required licenses, registrations, certifications, or special requirements necessary to perform the job.

21. Check below the type of supervision provided by the immediate supervisor to this position.
☐ CLOSE/HANDS ON    or    ☒ GENERAL/ADMINISTRATIVE

22. Additional information and comments (additional sheets may be attached, if necessary).

| Item # | |
|---|---|
| | |
| | |
| | |
| | |

### VERIFICATION - READ CAREFULLY BEFORE SIGNING

I hereby certify that I have read the above and verify that it is, to the best of my knowledge, correct and accurate. I understand that disciplinary action could be taken against anyone who knowingly provides false information.

| _signature_ | 09/05/2008 | | (334) 242-2328 |
|---|---|---|---|
| Signature of Incumbent | Date | | Telephone#(ATTNET) |
| _signature_ | 09/05/2008 | DIRECTOR INFORMATION TECHNOLOGY | |
| Signature of Supervisor | Date | Title/Classification | Telephone#(ATTNET) |
| _signature_ | 9/9/08 | | |
| Signature of Appointing Authority | Date | | Telephone#(ATTNET) |

QUESTIONNAIRES NOT SIGNED BY ALL PARTIES WILL NOT BE RETURNED

Defendants 0533

HOLLEY F. TINDOL



## Essential Functions
### Worksheet

Division: INFORMATION TECHNOLOGY  Section: INTEGRATED TAX SYSTEMS

Is performing this function a fundamental reason the job exists?

Will there be serious consequences if the function is not performed?

Do you spend most or a majority of your time performing this function?

Is it impossible to re-assign this function to another individual?

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | PCQ# | 4239719 | |
| | | | Job Class | 10587 | |
| | | | Review Date | 09/05/2008 | |
| | | | Rater Name | Kenneth C. Ball | |

| | | | | Responsibilities |
|---|---|---|---|---|
| Y | Y | N | Y | ① Supervises management and technical personnel.. |
| Y | Y | Y | Y | ② Manages the activities of the RITS, ARIS progamming.. |
| Y | Y | N | Y | ③ Assists Director in planning, directing various functionsof the division |
| N | Y | N | N | ④ Researches, identifies, evaluates and recommend new technolgy.. |
| N | Y | N | N | ⑤ Develops/evaluates proposals and contracts pertaining to IT.. |
| | | | | 6. |
| | | | | 7. |
| | | | | 8. |
| | | | | 9. |
| | | | | 10. |

DIVISION
HUMAN RESOURCES
REVENUE DEPARTMENT

2008 SEP 5 PM 3 20

Defendants 0534

## Affidavit of Linda Ellis

# Exhibit

# C

**PROMOTIONS OF ADOR EMPLOYEES FROM JULY 1, 2011 THROUGH JUNE 1, 2014**

**WHO DISCLOSED RELATIVES WORKING FOR ADOR**

| Employee/Date | Division | Class/New Class | Relative | Division |
|---|---|---|---|---|
| Kathleen Abrams/ 7/1/12 | Ind. & Corp | Rev Manager II/Rev Div. Dir I | Kim Peterson | Ind. & Corp. |
| Michael Adams/ 9/16/13 | Ind. & Corp | RE I/RE II | Jeri Thrower | Ind. & Corp |
| Natasha Avies/ 7/16/13 | Bus. & License | RE II/RE III | Sheneal Gibbs | Ind. & Corp |
| Kimberly Bethea/ 12/1/13 | Collections | RCO I/RCO II | Joyce Hodge | Sales & Use |
| Evelyn Boykin/ 7/16/13 | Motor Vehicle | Acct. Clerk/ASA III | Ozella Harris | Motor Vehicle |
| Joseph Brewer/ 12/1/11 | Collection | RCO I/TVA I | Rouen Reynolds | Sales & Use |
| Beverly Daniels/ 10/16/12 | ITD | IT Sys Spec. Assoc/ IT Sys. Spec. | Harold Daniels* | Sales & Use |
| Beverlyn Dean/ 1/16/12 | Financial Operations. | Acct/Staff Acct. | Shenika Harris Davenport | Financial Operations |
| Jeffry S. Donadson/ 2/1/14 | Ind. & Corp | RE I/RE II | Sandy Donaldson | Bus. & License. |
| Liwana Easterly/ 10/1/12 | Ind. & Corp | RE I/RE II | Sarah Johnson | Ind. & Corp |
| Daryl Frazier/ 7/16/11* | Processing | Clerk/Warehouse Worker | Tashaundra Brown | Financial Operations |
| Gary Graham/ 12/1/13 | ITD | IT Sys Spec. Sr./IT Manager II | Don Graham | Processing |

PLAINTIFF'S
EXHIBIT

8

000439

| Employee/Date | Division | Class/New Class | Relative | Division |
|---|---|---|---|---|
| Sherry Helms/ 5/1/14 | Motor Vehicle | Rev Manager I/Rev Manager II | Sidney Coon | ITD |
| | | | Holly Coon | Tax Policy/Res. |
| Kelly Himel/ 11/1/12 | Ind. & Corp | FAS I/FAS II | Billy Barnes | Financial Operations |
| April Hoffman/ 6/16/12 | Sales & Use | RE II/RE III | Julie Nelson | Sales & Use |
| Denitra Jones/ 12/16/13 | Ind. & Corp | RE II/RE III | Hazel Scott | Ind. & Corp |
| Leon Kelly/ 3/1/14 | Collections | RCO III/Rev Manager I | Michael Kelly | Collections |
| LaMonica Long/ 9/1/11 | Ind. & Corp | RE II/RE III | Betty Knowles | Ind. & Corp |
| Brittni Lucy Potter/ 9/1/13 | Commissioner's Office | RE II/RE III | James Lucy | Ind. & Corp |
| James Lucy/ 10/1/11 | Ind. & Corp | Rev Manager II/Rev Div Dir II | Brittni Lucy Potter | Commissioner's Off. |
| Jane Mayberry/ 2/16/12 | Sales & Use | RE III/Rev Manager I | James Mayberry | Sales & Use |
| Danny McLendon/ 9/1/11 | Collections | RCO III/Rev Manager I | Heather McLendon | ITD |
| Breunna Murphy/ 6/1/13 | Processing | ASA I/ASA II | Natalie Murphy | Processing |
| Selina Nettles/ 9/16/12 | Financial Operations | Custodial Worker/Warehouse Wk | Darlene Williams | Financial Operations |
| 3/16/14 | | Custodial Worker/Stock Clerk I | | |
| P. Lynn Nicholson/ 7/1/11 | Sales & Use | RE III/Rev Manager I | Les Nicholson | Ind. & Corp |

000440

| Employee/Date | Division | Class/New Class | Relative | Division |
|---|---|---|---|---|
| Kimberly Perry/ 4/16/12 | Bus. & License | ASA I/ASA II | Mary Perry | Sales & Use |
| Cornelius Pettus/ 7/16/11 | Processing | Laborer/Warehouse Worker | Gerald Thomas | Financial Operations |
|  |  |  | Shekenya Pettis | Ind. & Corp |
| Angela Shivers/1/1/12 | Bus. & License | Acct. Clerk/RE I | Wanda Lawrence | Ind. & Corp |
| Lynette Spraggins/ 12/1/11 | Commissioner's Off | RCO III/Rev Manager I | Sharhonda Armont | Motor Vehicle |
| Kashay Stanford/ 5/16/13 | ITD | Programr/Programr Analyst Assoc | Benson Webb | ITD |
| Timothy Stough/ 3/16/12* | Motor Vehicle | Stock Clerk II/Warehouse Supv. | Betty Stough | Sales & Use |
| Valerie Thomas/ 9/1/11 | Ind. & Corp | RE II/RE III | Kathy Bowie | Processing |
| Charles Tice/ 8/1/11 | Sales & Use | RE II/FAS II | Shelley Tice | Property |
| Kyle Tindol/ 5/1/14 | ITD | Programr/Programr Analyst Assoc | Holley Tindol* | State Finance Dept. |
| Valinda Underwood/ 12/16/13 | Motor Vehicle | ASA II/ASA III | Cynthia Underwood* | Asst. Commissioner |
| Justin Waddle/ 8/1/11 | Processing | ASA I/ASA II | Julie Reese | Financial Operations |
| 4/1/14 |  | ASA II/ASA III |  |  |
| Kenny Ward/ 1/1/14 | Ind. & Corp | RE I/RE II | Jamie Brooks | Bus. & License |
| Elaine White/ 9/1/11 | Ind. & Corp | RE II/RE III | Kevin White | Ind. & Corp |

000441

| Employee/Date | Division | Class/New Class | Relative | Division |
|---|---|---|---|---|
| Raylan White/ 7/1/13 | Ind. & Corp | RE I/RE II | Teresa Neal | Ind. & Corp |
| | | | James Neal | Ind. & Corp |
| Darlene Williams/ 9/16/12 | Financial Operations | Warehouse Wk/Stock Clerk I | Selina Nettles | Financial Operations |
| Kathy Williams-Bowie/ 8/1/11 | Processing | Acct. Tech/RE I | Valerie Thomas | Ind. & Corp |
| 11/1/13 | | RE I/RE II | | |

*No longer employed with ADOR

000442