IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES KYLE TYNDOL, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:13-CV-92-WKW |
| | ) | (WO) |
| ALABAMA DEPARTMENT OF | ) | |
| REVENUE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPNION AND ORDER

Before the court is the motion for attorney's fees (Doc. # 67) filed on behalf of Defendants Jackie Graham and Julie Magee in their individual capacities. Defendants seek an award of attorney's fees pursuant to 42 U.S.C. § 1988 and Rule 11 of the Federal Rules of Civil Procedure.  Therefore, the court construes the motion for attorney's fees as containing a motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure and a motion for attorney's fees pursuant to 42 U.S.C. § 1988.  Also pending is Defendants' supplemental motion for attorney's fees (Doc. # 85).  Upon consideration of the motions, the court concludes that they are due to be denied.

## I.   PROCEDURAL HISTORY

On February 13, 2013, Plaintiff James Kyle Tindol filed a complaint against Defendants Alabama Department of Revenue, Alabama Personnel Department,

Jackie Graham, and Julie Magee.   Plaintiff sued Graham and Magee in their individual and official capacities.  Plaintiff alleged that Defendants denied him due process by denying him a promotion in Defendant Department of Revenue's IT department on the basis of the Department of Revenue's nepotism policy.[1]  Plaintiff asserted the following claims in his complaint:

- Count I: pursuant to 42 U.S.C. § 1983, for violation of the equal protection guarantee of the 14th Amendment;

- Count II: pursuant to 42 U.S.C. § 1983, for violation of the procedural due process guarantee of the 14th Amendment;

- Count III: pursuant to 42 U.S.C. § 1983, for violation of the substantive due process guarantee of the 14th Amendment;

- Count IV: state law claim for negligence; and

- Count V: state law claim for breach of employment contract.

On July 1, 2014, Plaintiff voluntarily moved to dismiss Count III, his substantive due process claim.  (Doc. # 26.)  On July 3, 2014, the court granted the motion and dismissed Count III.  (Doc. # 27.)

On July 18, 2014, Defendants filed motions for summary judgment on Plaintiff's remaining claims (Docs. # 30, 32, 34), and Plaintiff filed a motion (Doc. # 35) for partial summary judgment.  On January 23, 2015, the court granted

---

[1] Plaintiff's mother, Holley F. Tindol, was also employed by the Department of Revenue.

summary judgment on all of Plaintiff's claims.  (Docs. # 65, 66.)

On February 6, 2015, Defendants Jackie Graham and Julie Magee filed a motion for attorney's fees for the defense of the claims asserted against them in their individual capacities.  (Doc. # 67.)

## II.  DISCUSSION

**A.   <u>Attorney's Fees as a Sanction Under Rule 11 of the Federal Rules of Civil Procedure</u>**

Defendants argue that they are entitled to attorney's fees as a sanction under Rule 11 of the Federal Rules of Civil Procedure.  Rule 11 provides for imposition of sanctions on a party's motion under the following conditions:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

Fed. R. Civ. P. 11(c)(2).

Defendants did not file their Rule 11 motion "separately from any other motion." *Id*.  Defendants also did not serve the motion at least 21 days prior to filing it, despite the plain language of the Rule.  Defendants argue that sending a letter to Plaintiff's attorney on May 29, 2014, asking him to "consider the Rule 11 basis" of the two state law claims satisfied the spirit, if not the letter, of Rule 11's safe harbor

provision.  To justify their argument, and apparently without any sense of irony,[2] Defendants cite three cases from other circuits without disclosing that those cases have consistently been rejected by other courts; that the majority of circuits do not allow use of informal letters to trigger the Rule 11 safe harbor provision; and that, with respect to whether an informal letter triggers the safe harbor provision, two of the three cited cases are no longer good law in their respective jurisdictions.  *See* Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1337.2 (3d ed.) (collecting cases to support statements that "the safe harbor period begins to run only upon service of the proposed Rule 11 motion" and that "several courts have held that informal notice of a potential violation is insufficient to trigger the beginning of the twenty-one day safe harbor period").

First, Defendants cite *Nisenbaum v. Milwaukee County*, 333 F.3d 804 (7th Cir. 2003), in which the court held that sending an informal demand letter without a motion "substantially complied with" the requirements of Rule 11.  As other courts have noted, *Nisenbaum* is conclusory and unpersuasive.[3]  *See, e.g.*, *In re Pratt*, 524 F.3d 580, 587–88 (5th Cir. 2008) ("In [*Nisenbaum*], the Seventh Circuit did not address the language of Rule 11, the Advisory Committee Notes to the Rule, or any

---

[2] "[T]he filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions."  Fed. R. Civ. P. 11 advisory committee's note to 1993 amendments.

[3] When a party cites a case from another circuit as persuasive authority, the party should, in full candor, indicate whether that case has been rejected by other courts and whether the circuits are split on the relevant issue.  Defendants did not do so.

other Rule 11 jurisprudence. . . .  Because the Seventh Circuit provided little analysis and cited no authority for its holding, the propriety of its holding has been called into doubt on more than one occasion."); *Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 768 (6th Cir. 2014) ("[*Nisenbaum*] declines to address any of the textual or policy concerns outlined [in *Penn*], and other circuits roundly criticize the decision's cursory reasoning."); *Roth v. Green*, 466 F.3d 1179, 1193 (10th Cir. 2006) ("We find [*Nisenbaum*] unpersuasive . . . because it contains no analysis of the language of Rule 11(c)(1)(A) or the Advisory Committee Notes, cites to no authority for its holding, and indeed is the only published circuit decision reaching such a conclusion.").

Second, Defendants cite *Barker v. Bank One Lexington, N.A.*, 156 F.3d 1228, 1998 WL 466437 (6th Cir. 1998) (unpublished panel order), in which the Sixth Circuit held that a movant substantially complied with Rule 11 by sending warning letters.  Defendants cite *Barker* without disclosing that the case is an unpublished panel order that was expressly rejected as nonbinding and unpersuasive by a subsequent published panel decision of the Sixth Circuit.  *See Penn*, 773 F.3d at 768 (noting that, as an unpublished decision, *Barker* "neither bind[s] us nor persuade[s] us to forsake the benefit to bench and bar afforded by requiring strict compliance with Rule 11's clear text"); *see also Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011) ("Unpublished decisions in the Sixth Circuit are, of course, not binding

precedent on subsequent panels.").

Third, Defendants cite *Jeffreys v. Rossi*, 275 F. Supp. 2d 463 (S.D.N.Y. 2003), holding that a defendant complied with Rule 11 by sending "a detailed letter to plaintiff's counsel outlining defendants' anticipated Rule 11 motion and requesting that [the plaintiff] withdraw his motion to amend the [c]omplaint and discontinue the action entirely." *Id*. at 473, 480 n.27. However, Defendants fail to disclose that other judges in the Southern District of New York have declined to follow *Jeffreys*.[4] Defendants also fail to mention that, in *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012), the Second Circuit Court of Appeals expressly held that, although Rule 11 does not require advance service of exhibits or a supporting legal memorandum, "[t]he safe-harbor provision is a strict procedural requirement," and "[a]n informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21–day safe harbor period."

---

[4] *See*, *e.g.*, *Holmes v. Allstate Corp.*, No. 11 CIV. 1543 LTS DF, 2012 WL 627238, at *18 & n.20 (S.D.N.Y. Jan. 27, 2012), report and recommendation adopted, No. 11 CIV. 1543 LTS DCF, 2012 WL 626262 (S.D.N.Y. Feb. 27, 2012) (collecting cases from the Southern District of New York and noting that "this [c]ourt has repeatedly refused to impose sanctions based on mere warning letters, even where the challenged conduct was sanctionable"); *Diamonds.net LLC v. Idex Online, Ltd.*, 254 F.R.D. 475, 477 (S.D.N.Y. 2008) ("The Court . . . sees no reason not to apply Rule 11 as it is written."); *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 309 (S.D.N.Y. 2005) ("Unfortunately for Defendants . . . the plain language of the rule states explicitly that service of the motion itself is required to begin the safe harbor clock – the rule says nothing about the use of letters.").

Defendants' cited cases do not persuade this court to disregard the language of Rule 11. As numerous other courts have explained, the spirit, purpose, and plain language of Rule 11's safe harbor provision cannot be satisfied with an informal warning letter. *See, e.g., Roth*, 466 F.3d at 1191–93. In any event, however, the cases Defendants selectively cite do not apply to the facts of this case. In *Nisenbaum*, the Seventh Circuit did not describe the contents of the demand letter in question, except to indicate that the letter "alerted [the offending party] to the problem and gave him more than 21 days to desist." *Nisenbaum*, 333 F.3d at 808. In *Barker*, the informal letter warned the plaintiff "in no uncertain terms that [the defendants] would be seeking sanctions due to the obvious frivolity of this case." 1998 WL 466437 at *2. Further, in *Barker*, after sending the informal letter, the defendants "also served [the plaintiff] with their motion for sanctions 21 days before filing it with the court." *Id.* In *Jeffreys*, the movants prefaced the motion with "a detailed letter" that "outlin[ed] their anticipated motion and attach[ed] evidentiary support" and that expressly informed the plaintiff of the intent to file a motion for sanctions if the alleged Rule 11 violation was not withdrawn within 21 days.

Thus, in the cases cited by Defendants, the informal letters provided fair notice of (1) the movant's intent to file a Rule 11 motion if the violation was not corrected; and (2) the substance of the arguments that would be raised in the forthcoming motion for sanctions. In this case, however, Defendants' informal letter did not

fairly place Plaintiff on notice that a Rule 11 motion would be forthcoming if Plaintiff did not withdraw his claims within 21 days, and the letter did not fairly detail the full substance of the motion for sanctions as to all claims. [5] *See Lancaster v. Zufle*, 170 F.R.D. 7, 7 (S.D.N.Y. 1996) ("[T]he plain language of the Rule expressly requires the serving of a formal motion, and with good reason, for by serving such a motion a movant itself certifies to its own compliance with Rule 11 in bringing [the] motion and thus places its adversary on notice that the matter may not be viewed as simply part of the paper skirmishing among adversaries that too often characterizes litigation in this uncivil age.").

Accordingly, the motion for sanctions is due to be denied for noncompliance with Rule 11.

## B.   Entitlement to Attorney's Fees Pursuant to 42 U.S.C. § 1988

### 1.   *Standard of Review*

A prevailing defendant in a civil rights case may be awarded attorney's fees pursuant to 42 U.S.C. § 1988 only if "'the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith, or . . . the plaintiff continued to litigate after it clearly became so.'" *Hughes v.*

---

[5] The motion for sanctions seeks relief "as to all of Plaintiff's claims," but the letter merely requested that Plaintiff "consider what Rule 11 basis [Plaintiff] had in fact and law for the breach of contract claims and the negligence claims."   (Doc. # 67-1.)   The letter also requested that Plaintiff consider Defendants' contention that Plaintiff had "no basis in law or fact" for certain other claims in the complaint, but did not implicate Rule 11 with respect to those other claims. The letter did not state that a Rule 11 motion would follow if Plaintiff failed to withdraw his claims.

*Rowe*, 449 U.S. 5, 14 (1980) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)).

"The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees" under § 1988. *Hughes*, 449 U.S. at 14. To determine whether an action is "frivolous" for purposes of § 1988, the court focuses on "'whether the case is so lacking in arguable merit as to be groundless or without foundation[,] rather than [on] whether the claim was ultimately successful.'" *Sullivan v. Sch. Bd. of Pinellas Cty.*, 773 F.2d 1182, 1189 (11th Cir. 1985) (quoting *Jones v. Tex. Tech Univ.*, 656 F.2d 1137, 1145 (5th Cir. 1981)). "Factors considered important in determining whether a claim is frivolous include: (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." *Id.* These factors "are general guidelines only, not hard and fast rules. Determinations regarding frivolity are to be made on a case-by-case basis." *Id.*

## 2. *Discussion*

### a.   **Fifth Amendment Claim**

Plaintiff included stray references to the Fifth Amendment in the jurisdictional statement of his complaint and in the demand for relief sought. Plaintiff did not reference the Fifth Amendment elsewhere in his complaint, nor did he state factual

allegations or claims for relief that could reasonably be construed as an assertion of a Fifth Amendment violation.  As Defendants recognized in their summary judgment brief (Doc. # 39 at 30), Plaintiff's stray references to the Fifth Amendment at the beginning and end of his complaint did not, without more, assert a claim for relief for a Fifth Amendment violation.  (Doc. # 1.)  *See* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.").

Defendants devoted a one-sentence paragraph in their summary judgment brief to explaining that Plaintiff did not raise a Fifth Amendment claim, and a footnote in the brief to explaining that any Fifth Amendment claim would be subject to dismissal on grounds that no federal governmental entity is involved in the case.  (Doc. # 39 at 30 & n. 21.)  Plaintiff did not attempt to defend or contest Defendants' arguments regarding the existence or viability of a Fifth Amendment claim.

As Defendants point out, the court granted summary judgment on the Fifth Amendment claim.  (Doc. # 65 at 22.)  However, to be entitled to attorney's fees, a defendant must not only be the prevailing party, but the defendant must be the prevailing party on a frivolous, unreasonable, or groundless claim asserted by the plaintiff.  *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1646 (2016)

("When a defendant is the prevailing party on a civil rights claim[,] . . . district courts may award attorney's fees if the plaintiff's claim was frivolous, unreasonable, or groundless." (citations and internal quotation marks omitted)).   Although the complaint inartfully included stray references to the Fifth Amendment, for purposes of deciding the motion for attorney's fees, it cannot reasonably be said that Plaintiff asserted a Fifth Amendment claim at all, frivolously or otherwise.   Therefore, Defendants are not entitled to attorney's fees with respect to that claim.

### b.    Equal Protection Claims

Plaintiff was unable to submit evidence necessary to support an as-applied equal protection challenge to the Department of Revenue's use of its nepotism policy to deny Plaintiff a promotion.   Therefore, the court granted summary judgment on that claim.   (Doc. # 65 at 29–32.)   Plaintiff was also unable to sustain a facial equal protection attack on the Department of Revenue's nepotism policy by articulating a colorable legal argument pertinent to the rational basis test.   (Doc. # 65 at 34 ("Mr. Tindol's argument [in support of his facial equal protection challenge] distracts from the necessary constitutional inquiry of a state regulation subject to a facial attack.").)   Therefore, Plaintiff's equal protection claims were frivolous.   *See Christiansburg*, 434 U.S. at 421 (holding that a district court has discretion to award attorney's fees in a Title VII case if an action was "without foundation"); *Sullivan*, 773 F.2d at 1189 (noting that claims are frivolous when a plaintiff cannot introduce any evidence to

support the claims).

### c.   Procedural Due Process Claim

In determining whether a plaintiff's claims are groundless or frivolous, the court usually considers various factors, including whether the claims survived summary judgment or a motion to dismiss, whether the plaintiff produced any evidence in support of the claim, whether the plaintiff failed to establish a prima facie case, whether the defendant offered to settle, and whether the case was dismissed prior to trial. *Head*, 62 F.3d at 355–56 (citing *Sullivan v. Sch. Bd. of Pinellas Cty.*, 773 F.2d 1182, 1189 (11th Cir. 1985)). These factors "are general guidelines only," though, "not hard and fast rules. Determinations regarding frivolity are to be made on a case-by-case basis." *Sullivan*, 773 F.2d at 1189.

The merits of Plaintiff's § 1983 procedural due process claim rested on whether he had a constitutionally protected property interest in his promotion.[6] Factors relevant to determining whether the claim was frivolous—such as Plaintiff's ability to survive summary judgment on his procedural due process claim, establish a *prima facie* case, provide evidence in support of the claim, and proceed to trial on the claim—depended entirely on the success of his novel argument that Alabama

---

[6] "In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

statutes and regulations covering merit system employees created a protected property interest in the promotion.  Therefore, in determining whether the procedural due process claim was frivolous, it would be patently unjust and illogical to weigh those factors against Plaintiff unless the novel property interest argument was itself so frivolous or groundless as to warrant the imposition of fees.

Similarly, unless Plaintiff's novel argument for sustaining the due process claim was frivolous, there is little support for Defendants' argument that Plaintiff unreasonably persisted in pursuing the claim by rejecting Defendants' early settlement offer.  *Cf. Desisto Coll., Inc. v. Town of Howey-In-The-Hills*, 718 F. Supp. 906, 916 (M.D. Fla. 1989), *aff'd sub nom. Desisto Coll., Inc. v. Line*, 914 F.2d 267 (11th Cir. 1990) ("The defendants' offer of settlement appears to have been a generous one in light of the strength of the defendants' legal position.  The Court, therefore, finds that the plaintiffs' refusal of the settlement offer further supports the unreasonableness of plaintiffs' filing the case and continuing the litigation after the case was filed.").  Although Plaintiff's novel argument ultimately proved to be the weaker position, Plaintiff's reasonableness in evaluating the relative strengths of the case or in rejecting Defendants' early settlement offer cannot be evaluated in hindsight.  *Christiansburg*, 434 U.S. at 421–22 (explaining that, in some circumstances, pursuit of a claim at the early stages of the case may be reasonable even when the law or the facts initially appear questionable or unfavorable).

Moreover, Defendants *did* offer to settle, which, under *Sullivan*, generally weighs in Plaintiff's favor on the motion for attorney's fees.

As Defendants point out, and as noted in the January 23, 2015 Memorandum Opinion and Order on the summary judgment motions (Doc. # 65 at 38), the Eleventh Circuit has held, as a general rule, that state employees do not have a state-created property interest in a promotion. *Wu v. Thomas*, 847 F.2d 1480, 1485 (11th Cir. 1988) ("[A] prospective promotion is not a property or liberty interest protected by the fourteenth amendment."); *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1486 (11th Cir. 1992), *overruled on other grounds by Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 837 (11th Cir. 2004) (summarily citing *Wu*). However, those Eleventh Circuit cases were not the end of the court's inquiry on summary judgment, nor should they have been.

"Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).[7] State rules and statutes can give rise to protected property interests

---

[7] Neither *Wu* nor *Olandeinde* addressed a situation where, as here, the plaintiff argued that a particular state statute or rule created a protected property interest in a promotion. In support of the holding in *Wu*, the Eleventh Circuit relied on *Clark v. Whiting*, 607 F.2d 634, 641 (4th Cir. 1979), which held that, "absent some statute, ordinance or institutional regulation," a state university faculty professor lacked any constitutionally recognized property interest in a promotion.

in employment where none would otherwise exist.  *Cf. Bishop v. Wood*, 426 U.S. 341, 344 – 45 (1976), *overruled in part on other grounds by Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 540 – 41 (1985) ("A property interest in employment can, of course, be created by ordinance, or by an implied contract. . . .  Whether such a guarantee has been given can be determined only by an examination of the particular statute or ordinance in question.").

In ruling on the parties' summary judgment motions, the court noted the general rule that, as a public employee, Plaintiff had no property interest in a promotion.  The court also considered Plaintiff's argument that certain Alabama statutes and rules created a protected property interest for state merit system employees in his situation.  Because the argument was novel, it was *per se* unsupported by existing law at the time the case was filed.  Ultimately, Plaintiff lost the argument.  However, in deciding whether § 1988 entitles a defendant to attorney's fees, frivolity and lack of foundation are not determined through the lens of hindsight; otherwise, § 1988 would discourage "'all but the most airtight claims.'" *Head v. Medford*, 62 F.3d 351, 355 (11th Cir. 1995) (quoting *Christiansburg*, 434 U.S. at 421–22).  "'Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.'"  *Id*. (quoting *Christiansburg*, 434 U.S. at 421–22).  "[S]ection 1983 claims should not be considered groundless or without foundation for the purpose of

an award of fees in favor of the defendants when the claims are meritorious enough to receive careful attention and review." *Busby v. City of Orlando*, 931 F.2d 764, 787 (11th Cir. 1991).

The court's comments at the October 21, 2014 pretrial conference adequately demonstrate that, without the benefit of hindsight, Plaintiff's claims were sufficiently meritorious to deserve careful consideration. (Doc. # 69.) At the pretrial conference, the court commented on the arguments in the pending summary judgment briefs as follows:

> So this case appears to me to be — all cases are important, but this seems to be a pretty significant case, potentially. And so my first question is rhetorical. Do you really want a ruling on your [summary judgment] motions? And if you do, you're going to get them; and there's going to be some law set one way or the other. I'm not sure that's what everybody wants. Maybe the plaintiffs are trying to make new law for the state merit system. Maybe the defendants want a definitive ruling on it. You're going to get it. I'm right in the middle of it, and it's a very interesting case. I'm not sure that there is a lot of law directly on point, particularly from the plaintiff's perspective, but there is an argument there. So the first thing I'm going to bring up but the last thing we'll discuss is whether y'all are able to have any chance of settling the case.
>
> Now, you've made your licks. You've made your points. It's good briefing on both sides. I know the case has been somewhat contentious, but it's because everybody is passionate about your positions. I just ask that you consider at this point is a — we're on a sidetrack today. And is this the point where you-all want to make law, because that's what's going to happen.
>
> . . . .
>
> We have two motions — well, three motions on the defense side and

one motion on the plaintiff's side.  But the motion on the plaintiff's side seems to hit the crux of the legal issue in the case.  There's a little bit more factual development in you-all's three motions on the defense side, but it basically boils down to some of the same issues.  I know that there are issues about who might be entitled to immunity and whether the agency itself should be a party, and those are the kind of things I'll resolve.  But the core issue is about this policy of the merit system and the process. . . .

. . . .

Well, it seems to me what [Plaintiff is] asking the Court to do . . . is potentially, one view of it, to turn the merit system on its head and to move the property interest two steps back or forward – I don't know if you say it's back or forward; I guess I'll just say back – not to the probationary period, but to actually promotion, potential promotion. And there's a logical problem if you're saying, well, it's not the probationary period.  That would still apply.  Yeah.  Well, then so you have a hearing as to whether you get the position or not, but you don't have a hearing as to whether you get fired after you — the day after you got the position.   So it seems to me that it – the potentiality for turning the whole system on its head is here, and that's why I think it's significant that we slow down and take our time to resolve the thing, from my standpoint.  Of course, it will wind up — on the legal issue, if y'all can't settle it, it's going to wind up in the Circuit before it's over with.

(Doc. # 69 at 3–4, 6–7, 12–13.)

It cannot be said that Plaintiff filed or continued to pursue the procedural due process claim knowing that he had no protected property interest.  *Cf. Head v. Medford*, 62 F.3d 351, 356 (11th Cir. 1995) (holding that a due process claim was "legally groundless" where the plaintiff, an at-will employee, asserted a procedural due process claim "based knowingly on a nonexistent property interest").   Rather, as the court noted while the summary judgment motions were pending, Plaintiff's

procedural due process claim was deserving of careful consideration. Therefore, the claim was not "groundless" or "without foundation" in the sense necessary to support an award of attorney's fees under § 1988. *See Hughes v. Rowe*, 449 U.S. 5, 15–16 (1980) ("Allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation' as required" for awarding attorney's fees to the defense under § 1988.).

### d.   State Law Claims

Defendants recognize that § 1988 does not authorize an award of attorney's fees solely for the defense of state law claims. Defendants argue that, under § 1988, they are entitled to attorney's fees for defending Plaintiff's state law claims merely because those claims are related to and arise out of the same set of facts as the frivolous federal claims.[8] (Doc. # 67 at 9–10, ¶ 23.) In support of this argument, Defendants cite *National Organization for Women v. Operation Rescue*, 37 F.3d 646, 653 (D.C. Cir. 1994), in which the United States Court of Appeals for the District of Colombia Circuit, citing *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983), noted that a plaintiff may be awarded attorney's fees on "related pendent state law claims" if the plaintiff "also prevails on its federal civil rights claim."

However, a defendant cannot establish entitlement to attorney's fees on

---

[8] Although Defendants argue that the state law claims are frivolous for purposes of Rule 11 sanctions, Defendants do not contend that the alleged frivolousness of the state law claims entitles them to attorney's fees under § 1988.

supplemental state law claims merely by showing that the state law claims are "interrelated with" the frivolous civil rights claims or that the state law claims "arose out of the same transaction" as the frivolous civil rights claims. *Fox v. Vice*, 563 U.S. 839, 839–40 (2011). Rather, a defendant must prove that the fees sought "would not have accrued but for the frivolous claim." *Id.* at 839.

Defendants make no effort to establish that they would not have incurred attorney's fees on the state law claims but for the defense of the frivolous federal civil rights claims. Therefore, Defendants have not shown that an attorney's fee award is appropriate under § 1988 with respect to the state law claims.

C.    **Amount of Attorney's Fees to Be Awarded**

This case involves frivolous and nonfrivolous § 1988 claims. The motion for attorney's fees does not indicate whether all of the requested attorney's fees were expended solely because of the frivolous allegations. It is not possible to award fees on the basis of the motion because it is not possible to determine what amount, if any, should be awarded as an attorney's fee. *See Fox v. Vice*, 563 U.S. 826, 840–41 (2011) ("In a suit of this kind, involving both frivolous and non-frivolous claims, a defendant may recover the reasonable attorney's fees he expended solely because of the frivolous allegations. And that is all."). Therefore, the motion for attorney's fees is due to be denied.

### III.   CONCLUSION

Accordingly, it is ORDERED:

1.     The motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure (Doc. # 67) is DENIED.

2.     The motion for attorney's fees pursuant to 42 U.S.C. § 1988 (Doc. # 67) is DENIED.

3.     The supplemental motion for attorney's fees (Doc. # 85) is DENIED.

DONE this 29th day of September, 2016.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE